**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **LAURA BRUZZESE**, | |
| Plaintiff, | Civil Action No. 23-23047 (ZNQ) (RLS) |
| v. | **OPINION** |
| **PASSAGES INTERNATIONAL, INC.**, | |
| Defendant. | |

**QURAISHI, District Judge**

    **THIS MATTER** comes before the Court upon Plaintiff Laura Bruzzese's ("Plaintiff" or "Bruzzese") Motion for Summary Judgment (ECF No. 36) and Defendant Passages International, Inc.'s ("Defendant" or "Passages") Motion for Summary Judgment (ECF No. 41) (collectively, the "Motions"). Both parties filed briefs in support of their Motions. (ECF Nos. 37 ("Pl. Moving Br."), 41-1 ("Def. Moving Br.").) Defendant opposed Plaintiff's Motion (ECF No. 51 ("Def. Opp. Br.")), and Plaintiff opposed Defendant's Motion (ECF No. 47 ("Pl. Opp. Br.")). Both parties replied in further support of their Motions. (ECF Nos. 52-53.)

    The Court has carefully considered the parties' submissions and decides the Motions without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, the Court will **DENY** both Motions.

## I.    BACKGROUND AND PROCEDURAL HISTORY[1]

### A.  Creation of the Small Urn and the Large Urn

Plaintiff is an artist who studied art as a student and makes her living by making and selling art.  (ECF No. 51-1 ("Def. Response to Pl. SUF") ¶ 1.)  Beginning in 2004 or 2005, Plaintiff began sculpting ceramic cremation urns for art galleries in California, Chicago, Santa Fe, Taos, Albuquerque, and New York.  (*Id.* ¶ 3.)  In or about 2008, Plaintiff conceived of the design for a cremation urn shaped like "an imagined sea turtle" and made from paper mâché.  (*Id.* ¶ 4.)  Plaintiff's inspiration for her small urn came from a video that she was sent by her sister showing turtles hatching on a beach in Saipan.  (*Id.* ¶ 5.)  Plaintiff asserts that her small urn was not copied from any picture or pictures of turtles or any turtle she had ever witnessed in life; Defendant disputes this fact.  (*Id.* ¶ 10.)

In or about 2010, Plaintiff approached Defendant about buying her small urn for distribution in the death care industry.  (*Id.* ¶ 39.)  Plaintiff presented to Darren Crouch, the Chief Executive Officer of Defendant two copies of her small urn—one copy with a craft paper finish and one copy with a newsprint finish.  (*Id.* ¶ 40.)  Defendant had never seen a cremation urn in the shape of an imagined sea turtle prior to having access to Plaintiff's small urn design.  (*Id.* ¶ 42.)  Crouch expressed interest in purchasing Plaintiff's small urns "if they could be modified in accordance with modifications he suggested to Plaintiff."  (ECF No. 48 ("Pl. Response to Def. SUF") ¶ 7.)  The precise modifications suggested by Crouch and later implemented by Plaintiff into the design of the small turtle urn are in dispute.  The parties do not dispute that "[o]ne of those modifications was a modification that allowed the urn to float on water for a certain amount of time."  (*Id.* ¶ 8; *see also* Def. Response to Pl. SUF ¶¶ 43, 45-46.)  Defendant adds, however, that

---

[1] Unless explicitly noted otherwise, all facts referenced in this Section are undisputed.  As evidence that a fact is undisputed, the Court cites to a party's response to a statement of material fact that concedes the relevant fact.

Crouch made multiple suggestions to change the design or amend the design to enable the small urns to actually work in the water," including "adding holes so that they would take in water and let out air"; "enlarging the opening so that it was not frustrating and it would be easy for funeral directors to put cremated remains in there"; and "adding some weight so they didn't float for an extended period of time, aggravating customers and potentially creating liability."  (ECF No. 51-6 ("Crouch Dep.") at 24:8-21; ECF No. 46 ("Crouch Decl.") ¶ 11; *see also* Def. Response to Pl. SUF ¶¶ 2, 11, 43-50, 53-61.)  It is undisputed that, after Plaintiff implemented Defendant's modifications, she entered into an exclusive agreement with Defendant to sell a small turtle urn (the "Small Urn").  (Pl. Response to Def. SUF ¶ 9.)

In or about 2013, Plaintiff and Defendant discussed the potential market for a turtle urn capable of holding the ashes for an adult human.  (Def. Response to Pl. SUF ¶ 62.)  The parties dispute who was responsible for the design of the larger turtle urn.  Plaintiff alleges that she designed a large urn and presented it to Defendant.  (*Id*. ¶¶ 19-27, 63.)  Defendant disputes this claim, asserting that Defendant "approached Plaintiff to create [the Large Urn] in the first place" and that "the development of the larger product was at [Crouch's] request."  (Crouch Dep. at 59:1-60:3; Crouch Decl. ¶¶ 13-16; *see also* Def. Response to Pl. SUF ¶¶ 11, 19, 20-24, 63-64, 66-67.)  Defendant alleges that it requested design modifications to the large turtle urn, including that the shell be of "a certain size in order to contain a full set of cremated remains," "changing the size of the opening for the cremated remains to be inserted," "widening and flattening of the fin to help with flotation," and "the addition of strategically placed holes to aid in the sinking of the turtle."  (Crouch Dep. at 57:19-58:25; Crouch Decl. ¶ 16; *see also* Def. Response to Pl. SUF ¶¶ 11, 19-20, 24, 63-64, 66-67.)  The parties do not dispute that, after Plaintiff made the large urn design "market-ready," Defendant began purchasing the larger urn (the "Large Urn") for distribution.

(Def. Response to Pl. SUF ¶ 65.)  Defendant claims, and Plaintiff disputes, that the Small Urn and Large Urn are "turtles that Plaintiff and [Crouch] developed together."  (Def. Response to Pl. SUF ¶ 11 (quoting Crouch Dep. at 29:18-23).)  Plaintiff claims, and Defendant disputes, that Plaintiff is the sole creator of the Small Urn and the Large Urn.  (Def. Response to Pl. SUF ¶¶ 11, 24.)

Defendant purchased and sold the Small Urn and the Large Urn from 2009 or 2010 to 2023. (Pl. Response to Def. SUF ¶ 12.)  Below are photographs of the Small Urn and Large Urn.

| The Small Urn (Pl. Response to Def. SUF ¶ 34.) | The Large Urn (Pl. Response to Def. SUF ¶ 32.) |
| --- | --- |

 

### B. Plaintiff's Registration of the Copyrights in the Small Urn and Large Urn

In 2014, Plaintiff filed for copyright protection on the finalized design of the Small Urn and the Large Urn, resulting in U.S. Copyright Registration Nos. Vau 1172540 and Vau 1173624, respectively.  (Pl. Response to Def. SUF ¶ 13; *see also* Def. Response to Pl. SUF ¶¶ 30-31.)

Defendant was not aware until September 2023 that Plaintiff had filed for copyright protection of the designs for the Small Urn and the Large Urn.  (Pl. Response to Def. SUF ¶ 14.)

### C.  Plaintiff Ends Her Business Relationship with Defendant

On or about August 31, 2022, Plaintiff notified Defendant by email that she would no longer be doing business with Defendant.  (Def. Response to Pl. SUF ¶ 75.)

On September 1, 2022, Defendant responded via email, stating that some of the urns were still in Defendant's possession and in their catalog and Defendant wanted to fulfill existing purchases.  (*Id*. ¶ 76.)

The parties agreed that Defendant would sell off its remaining inventory of the Small Urn and Large Urn and fulfill existing purchase orders.  (*Id*. ¶ 82.)  Defendant's last sales of the Small Urn and Large Urn were in June 2023.  (*Id*.; Pl. Response to Def. SUF ¶ 16.)

### D.  The Creation of Defendant's Turtle Urns

In 2023, Defendant tasked its employee, Britt Edward Gallagher, with developing a "new design for a turtle urn from scratch and one that looked like it was moving versus just flat and static."  (Pl. Response to Def. SUF ¶ 17 (internal quotation marks omitted).)  Gallagher began the design process by "download[ing] pictures from Google of sea turtles, [and doing] drawings."  (*Id*. ¶ 28.)  Defendant sought to design a turtle urn that "looked more like an actual turtle."  (*Id*. ¶ 19.) Defendant's design team "found images in the wild," discussed those images, and "where appropriate [] implemented the interpretation of those images into [Defendant's] original design." (*Id*. ¶ 23.)  Defendant's team did not discuss the Small Urn and the Large Urn during the design process of Defendant's turtle urns, except to state that they wanted the new design to be different. (*Id*. ¶ 24.)

In the fall of 2023, Plaintiff discovered that Defendant was selling turtle urns.  (Def. Response to Pl. SUF ¶ 83.)  According to Plaintiff, Defendant's turtle urns were the "same size, shape, color, texture, [and] gesture" as the Small Urn and the Large Urn.  (*Id*.; *see also* Def. Response to Pl. SUF ¶¶ 88-99 (stating that the following design elements of the parties' urns were

similar: sense of graceful swimming, gesture of the head, the proportion of the different parts, the color, the texture, the material, the composition, the shape of the eyes, the mouth, the shape of the front flippers and how they differ from the shape of the front flippers of a real turtle, and the shape of the back flippers and how they differ from the shape of the back flippers of a real turtle).

Below are photographs of Defendant's small and large turtle urns.

| Defendant's Small Urn (Pl. Response to Def. SUF ¶ 35.) | Defendant's Large Urn (Pl. Response to Def. SUF ¶ 33.) |
| --- | --- |

 

### E.  Procedural History

On December 12, 2023, Plaintiff initiated this action for copyright infringement.  (ECF No. 1.)  On January 17, 2024, Defendant answered the Complaint and counterclaimed for declaratory judgment of non-infringement, invalidity, and unenforceability.  (ECF No. 6.)  After the close of fact discovery, the parties cross moved for summary judgment.  (ECF Nos. 36, 41.)  Those motions are now ripe for decision.

## II.    SUBJECT MATTER JURISDICTION

The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331

because Plaintiff pursues claims against Defendant under a federal statute—the Copyright Act of 1976, 17 U.S.C. § 101, *et seq.*

## III.  <u>LEGAL STANDARD</u>

A court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Id.* When deciding the existence of a genuine dispute of material fact, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id.* at 251-52.  The Court must grant summary judgment if any party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  "[I]nferences, doubts, and issues of credibility should be resolved against the moving party."  *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n.2 (3d Cir. 1983).  That is, the court must view all facts "in the light most favorable to the nonmoving party." *Turco*, 935 F.3d at 161.

## IV.  <u>DISCUSSION</u>[2]

The parties each cross move for summary judgment on multiple grounds.  First, Plaintiff argues that Defendant is not a co-author of the Small Urn and Large Urn and, therefore, she is the sole owner of the copyrights at issue.  Second, both parties argue that they are entitled to summary

---

[2] Page numbers for record cites (i.e., "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties' submissions.

judgment on the "actual copying" element of copyright infringement. Plaintiff asserts that Defendant had access to her designs and that there are probative similarities between her urns and Defendant's. Defendant argues that it deliberately created new urn designs to look more like actual turtles and very different from the Small Urn and Large Urn. Third, both parties argue that they are entitled to summary judgment on the "substantial similarity" element of copyright infringement. Defendant asserts that any similarities between its urns and the Small Urn and Large Urn are based on the anatomy of a turtle and are, therefore, not protected under copyright law. Defendant also argues that there are numerous elements of its designs that are different from the Small Urn and the Large Urn. Plaintiff claims that she is seeking to protect her original expressions of a turtle and not its basic anatomy. She argues that there are similarities between the total concept and feel of her original expression of a turtle and Defendant's urns.

The test for copyright infringement has two elements: ownership of copyright and copying by the defendant. *Dam Things from Denmark, a/k/a Troll Co. ApS, v. Russ Berrie & Co., Inc.*, 290 F.3d 548, 561 (3d Cir. 2002). "Copying is proven by showing not only that the defendant had access to a copyrighted work, but also that there are substantial similarities between the two works." The United States Court of Appeals for the Third Circuit has subdivided the test for substantial similarity into "two considerations": (1) "'actual copying' which focuses on access in conjunction with '*probative*' similarity," and (2) "'actionable copying' which considers whether there is '*substantial*' similarity between the alleged infringing work and *protectible elements* of the original work." *Id.* (quoting *Boisson v. Banian, Ltd.*, 273 F.3d 262, 272 (2d Cir. 2001)) (emphasis in original).

### A. Copyright Ownership

Regarding the first element of copyright infringement, copyright ownership, there is no dispute that Plaintiff registered copyrights for both the Small Urn and Large Urn. (Def. Response

to Pl. SUF ¶¶ 30-31.)  Defendant, however, asserts that it is a co-author of these works.  (Def. Opp.

Br. at 15-18.)

Plaintiff disputes that Defendant contributed to the design of both the Small Urn and Large

Urn.  (Pl. Moving Br. at 10.)  However, she argues that, even accepting Defendant's allegation that

it suggested modifications to the design, Defendant cannot establish joint ownership for the

following reasons: Plaintiff registered the copyright alone, and Defendant must rebut this *prima*

*facie* evidence to prove that the Small Urn and Large Urn are joint works; Defendant admitted that,

before being approached by Plaintiff to sell her urns, it was not previously aware of any urns

shaped like turtles; Defendant's contributions were mere "suggestions"; Defendant admitted that

ownership of the designs was never discussed and no agreements were signed; Defendant did not

assert joint ownership in the Small Urn and Large Urn until this lawsuit; and Defendant did not

contribute copyrightable material to the design.  (*Id*. at 10-12.)

Defendant responds that Plaintiff's copyright registration is nothing more than a

placeholder for her joint rights with Defendant.  (Def. Opp. Br. at 18-19.)  Defendant asserts that

its contributions to the design were significant and that this Circuit does not require a joint author's

contribution to be independently copyrightable.  (*Id*. at 21.)  In addition, Defendant argues that the

undisputed evidence shows that both parties intended the work to be a unitary whole, in that neither

intended that the product be offered for sale without Defendant's modifications.  (*Id*. at 22-23.)

A court must distinguish "an author's interest in the copyright to his work from the

registration of his work."  *Brownstein v. Lindsay*, 742 F.3d 55, 66 (3d Cir. 2014).  "A 'copyright'

vests immediately upon the creation of the work."  *Id*. (citing 17 U.S.C. § 201(a)).  Registration,

on the other hand, serves "primarily to create a record of the creation of the work and it also allows

the author to bring civil claims under the Copyright Act." *Id*. (citing 17 U.S.C. § 411(a); 2 Nimmer on Copyright § 7.16).

The primary issue before this Court is whether Plaintiff and Defendant are co-authors of the Small Urn and Large Urn, creating joint works. "When two or more people create a 'joint work,' they become co-authors and co-owners of the work, each entitled to 'undivided ownership in the entire work.'" *Id*. at 64. "This ownership interest vests from the act of creating the work, rather than from any sort of agreement between the authors or any act of registration with the Copyright Office." *Id*.

A "joint work" is "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101. To become co-authors, "each author must contribute some non-trivial amount of creative, original, or intellectual expression to the work and both must intend that their contributions be combined." *Brownstein*, 742 F.3d at 64-65 (citing 1 Nimmer on Copyrights § 6.07). Although the components must be "inseparable or interdependent" parts of a whole, "each co-author's contribution need not be equal for them to have an equal stake in the work as a whole." *Id*.

"Whether a person is a co-author is an issue of fact." *Gaines v. Fusari*, No. 11-4433, 2012 WL 3018293, at *5 (D.N.J. July 24, 2012) (citing 1 Nimmer on Copyrights § 6.07 ("An issue of fact arises in addressing whether a person has made sufficient contributions to a work so as to claim to be its joint author.")).

Contrary to Plaintiff's contention that Defendant offers no evidence of co-authorship, Defendant points to the following evidence in dispute of Plaintiff's sole creation of the Small Urn:

- Crouch "made some recommendations and suggestions" to Plaintiff regarding her "figurines in the shape of turtles" that he "believed would enable them to be sold as biodegradable urns that could be placed in the water for use to scatter people's cremated remains." (Crouch Dep. at 23:19-24; *see also* Def. Response to Pl. SUF ¶¶ 2, 11.)

- Crouch "made the suggestions to change the design or amend the design to enable them to actually work in the water, *i.e.*, adding holes so that they would take in water and let out air; enlarging the opening so that it was not frustrating and it would be easy for funeral directors to put cremated remains in there; adding some weight so they didn't float for an extended period of time, aggravating customers and potentially creating liability. Those are a few of the things that [Crouch] . . . asked the Plaintiff to change before [Defendant] would consider selling them as urns to [its] customers." (Crouch Dep. at 24:8-21; Crouch Decl. ¶ 11; *see also* Def. Response to Pl. SUF ¶¶ 2, 11, 43-50, 53-61.)

- The Small Urn and Large Urn are "turtles that Plaintiff and [Crouch] developed together." (Def. Response to Pl. SUF ¶ 11 (quoting Crouch Dep. at 29:18-23).)

- "Defendant also had design modifications that it requested Plaintiff make to her [larger] turtle designs[,]" including that Defendant "needed the shell to be of a certain size in order to contain a full set of cremated remains," "changing the size of the opening for the cremated remains to be inserted," "widening and flattening of the fin to help with flotation," and "the addition of strategically placed holes to aid in the sinking of the turtle." (Crouch Dep. at 57:19-58:25; Crouch Decl. ¶ 16; *see also* Def. Response to Pl. SUF ¶¶ 11, 19-20, 24, 63-64, 66-67.)

- Defendant "approached Plaintiff to create [the Large Urn] in the first place." (Crouch Dep. at 59:1-60:3; Crouch Decl. ¶¶ 13-16; *see also* Def. Response to Pl. SUF ¶¶ 11, 19, 20-24, 63-64, 66-67.) "[T]he development of the larger product was at [Crouch's] request." (*Id.*)

Indeed, Plaintiff does not dispute that Defendant expressed interest in purchasing her turtle urns "if they could be modified in accordance with modifications suggested to Plaintiff." (Pl. Response to Def. SUF ¶ 7.) She admits that "[o]ne of those modifications was a modification that allowed the urn to float on water for a certain amount of time." (*Id.* ¶ 8.) Plaintiff also does not dispute that "[a]fter such modifications were implemented, Plaintiff entered into an exclusive agreement with Defendant for the Defendant to sell the small turtle urns . . . ." (*Id.* ¶ 9.) In addition, she admits that "[s]ometime after 2012, a larger version was created[,]" (*id.* ¶ 10), and that, "[i]n 2014, Plaintiff filed for copyright protection on the finalized design resulting in US Copyright Registration Nos. Vau 1172540 and Vau 1173624." (*Id.* ¶ 13; *see also* Def. Response to Pl. SUF ¶¶ 30-31.)

Considering that co-authorship is a question of fact, the Court finds that Defendant has sufficiently presented a genuine dispute of material fact regarding Plaintiff's sole authorship of the Small Urn and Large Urn.  That is, the factfinder must determine whether Defendant's disputed contributions to the Small Urn and Large Urn are "non-trivial."  *Brownstein*, 742 F.3d at 64-65. Plaintiff contends that Defendant's contributions are "utilitarian" and, therefore, not copyrightable. (Pl. Moving Br. at 13.)  However, the Court disagrees that such a requirement exists in this Circuit. The Third Circuit recognizes Nimmer on Copyright's *de minimis* standard for joint authorship, which is a lesser threshold for joint authorship.  *See Brownstein*, 742 F.3d at 64-65 (citing 1 Nimmer on Copyrights § 6.07) ("[E]ach author must contribute some non-trivial amount of creative, original, or intellectual expression to the work and both must intend that their contributions be combined"); *Beard v. Helman*, 722 F. Supp. 3d 521, 542 (M.D. Pa. 2024) ("The United States Court of Appeals for the Third Circuit has joined the Courts of Appeals for the First Circuit, and to a lesser extent Seventh Circuit, in applying a lesser threshold for joint authorship. In *Brownstein v. Lindsay*, the Third Circuit commented upon the joint authorship doctrine for the first time and adopted Nimmer's *de minimis* joint authorship standard.").  Nimmer provides that one may qualify as a joint author as long as his contribution is more than *de minimis* "even if his contribution standing alone would not be copyrightable."  *Cmty. for Creative Non-Violence v. Reid*, 846 F.2d 1485, 1496 (D.C. Cir. 1988), *aff'd*, 490 U.S. 730 (1989) (quoting 1 Nimmer on Copyrights § 6.07).  Thus, the factfinder need only determine whether Defendant contributed a non-trivial amount of creative, original, or intellectual expression to the Small Urn and Large Urn, not whether those contributions are, in and of themselves, copyrightable.

Furthermore, Plaintiff's argument that this Court should grant summary judgment in her favor on the intent element of joint authorship[3] is unpersuasive.  She contends that, because Crouch testified that ownership of the Small Urn and Large Urn designs was never discussed and no agreements were signed, it is undisputed that there was no intention between the parties to merge their contributions into inseparable or interdependent parts of a unitary whole.  However, as the Third Circuit has held, Defendant's alleged ownership interest vested from the act of creating the work, rather than from any sort of agreement between the parties or Plaintiff's act of registration with the Copyright Office.  *See Brownstein*, 742 F.3d at 64.  Plaintiff also argues that the parties' lack of intent is clear because Defendant did not raise its joint authorship in the copyright until this lawsuit.  Yet, Plaintiff herself admits that Defendant was not informed that she had filed for copyright protection of the finalized designs until September 2023.  (Pl. Resp. to Def. SUF ¶ 14.)  Moreover, Defendant has introduced countervailing evidence demonstrating the parties' intent to merge their contributions, such as the collaboration between Plaintiff and Defendant on the modifications to the Small Urn and Large Urn, Plaintiff's implementation of those modifications, and Plaintiff's copyright registration of designs for both the Small Urn and Large Urn that incorporated Defendant's contributions.  (Def. Response to Pl. SUF ¶¶ 2, 11, 19, 20-24, 30-31; Pl. Response to Def. SUF ¶¶ 7-9, 13.)  The factfinder must decide the fact-intensive issue of joint author intent.  The factfinder must assess whether the parties' evidence of intent (or lack thereof) is sufficient to show that they intended to merge their contributions into inseparable or interdependent parts of a unitary whole.  That assessment will also necessarily include credibility

---

[3] Although neither party raises such an argument in their briefing, the Court notes the United States District Court for the Middle District of Pennsylvania's comprehensive analysis regarding the standard in this Circuit for joint author intent.  *Beard*, 722 F. Supp. 3d at 547-552.  The Court is persuaded by the Middle District's reasoning, especially considering the lack of precedent in the Third Circuit on this issue.  In short, this Court will follow *Beard*'s guidance by applying the standard for intent articulated in the Copyright Act itself—the "putative joint authors' intention that their contributions be merged into inseparable or interdependent parts of a unitary whole."  *Id*. at 552.

determinations regarding trial witness testimony from Plaintiff and Crouch on the nature of their working relationship and the urn modifications discussed and applied to the designs. Therefore, the Court will deny Plaintiff's Motion for Summary Judgment on the "copyright ownership" element of copyright infringement.

### B. Actual Copying

Both parties seek summary judgment in their favor regarding the "actual copying" element of copyright infringement. (Def. Moving Br. at 10-12; Pl. Moving Br. at 14.) Plaintiff argues that there is no dispute that Defendant had access to her designs and the works are "strikingly" similar. (Pl. Moving Br. at 14.) Defendant points to the deposition testimony of Crouch and Gallagher, which provides that Defendant sought to develop a new design of a turtle urn from "scratch" that looked more like an actual turtle and that was meant to be "very different" from the Small Urn and Large Urn designs. (Def. Moving Br. at 10-12.)

"Actual copying focuses on whether the defendant did, in fact, use the copyrighted work in creating his own." *Tanksley v. Daniels*, 902 F.3d 165, 173 (3d Cir. 2018). A plaintiff may establish actual copying through "direct evidence or inferred by evidence of access and similarities that are probative of copying between the works." *Dam Things from Denmark*, 290 F.3d at 562 (internal quotation marks omitted). "Access means that an alleged infringer had a reasonable possibility—not simply a bare possibility—of [seeing] the prior work; access cannot be based on mere speculation or conjecture." *Jorgensen v. Epic/Sony Recs.*, 351 F.3d 46, 51 (2d Cir. 2003) (internal quotation marks omitted). To support access, "a plaintiff must offer significant, affirmative and probative evidence." *Id*. (internal quotation marks omitted). The existence of similarities also supports the inference of copying, and "a probative similarity 'requires only the fact that the infringing work copies something from the copyrighted work.'" *Bill Diodato Photography, LLC v. Kate Spade, LLC*, 388 F. Supp. 2d 382, 389 (S.D.N.Y. 2005) (quoting

*Ringgold v. Black Entm't Television, Inc.*, 126 F.3d 70, 75 (2d Cir. 1997)). "On the question of copying, the finder of fact may consider any aspect of the works that supports an inference of copying, even elements that are incapable of copyright protection." *Tanksley v. Daniels*, 902 F.3d 165, 173 (3d Cir. 2018) (citing *Laureyssens v. Idea Grp., Inc.*, 964 F.2d 131, 139-140 (2d Cir. 1992)).

Here, there is no dispute that Defendant had access to the Small Urn and the Large Urn. (Pl. Response to Def. SUF ¶¶ 12, 17; Def. Response to Pl. SUF ¶¶ 39-41, 49, 51, 59, 61, 63, 68, 82.) And there are certainly similarities between the designs. (Pl. Response to Def. SUF ¶¶ 32-35.) However, whether there are probative similarities between the urn designs and whether Defendant's story of independent creation is credible are questions for the trier of fact. *See O.P. Sols., Inc. v. Intell. Prop. Network, Ltd.*, No. 96-7952, 1999 WL 47191, at *4 (S.D.N.Y. Feb. 2, 1999) ("While copying as a factual matter typically depends on evidence of access and probative similarity, presentation of such evidence does not compel the trier of fact to find actual copying. Indeed, even after proof of access and probative similarity a trier of fact may be justified in finding no copying if such trier believes the defendant's evidence of independent creation." (internal quotation marks omitted)); *Tienshan, Inc. v. C.C.A. Int'l (N.J.), Inc.*, 895 F. Supp. 651, 656 (S.D.N.Y. 1995) ("In determining 'probative similarity,' the trier of fact may 'dissect' the work to separate the similarities from the dissimilarities."); *see also Freeman v. Deebs-Elkenaney*, No. 22-02435, 2024 WL 3634738, at *8 (S.D.N.Y. Aug. 1, 2024) (finding that expert report "usurp[ed] the jury's role" in determining probative similarity).

In short, the Court cannot determine based on the record before it that no reasonable jury, properly instructed, could find that that there are probative similarities between the two works.

Therefore, the Court will deny the parties' Motions on the "actual copying" element of copyright infringement.

### C. Substantial Similarity

Both parties seek summary judgment in their favor regarding the "substantial similarity" element of copyright infringement.  (Def. Moving Br. at 12-24; Pl. Moving Br. at 16-18.) Defendant argues that any similarities between its turtle urn designs and the Small Urn and Large Urn are based on realistic depictions of animals and are not protected by copyright law under the *scènes à faire* doctrine.  (Def. Moving Br. 12-15.)  Plaintiff responds that this contention is "easily undermined" as Defendant's urns "look nothing like realistic turtles, nor do Bruzzese's"; Defendant's urns do, however, look substantially similar to the Small Urn and Large Urn.  (Pl. Opp. Br. at 17.)  To the extent there are protectible elements in both sets of urn designs, Defendant argues that an ordinary observer can immediately detect significant differences between the individual components of its designs and the Small Urn and Large Urn.  (Def. Moving Br. at 17-24.)  Plaintiff asserts that, for sculptural works, the lay observer must compare the "total concept and feel of the works," not "each feature in isolation."  (Pl. Opp. Br. at 11-12.)  Plaintiff argues that, by doing so, a lay observer would find substantial similarity between the elements of her designs and Defendant's.  (Pl. Moving Br. at 17-18.)

When assessing "substantial similarity," the factfinder must first decide "whether there is sufficient similarity between the two works in question to conclude that the alleged infringer used the copyrighted work in making his own."  *Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 208 (3d Cir. 2005) (internal quotation marks omitted).  "The fact-finder must decide without the aid of expert testimony, but with the perspective of the 'lay observer,' whether the copying was 'illicit,' or 'an unlawful appropriation' of the copyrighted work."  *Granger v. Acme Abstract Co.*, 900 F. Supp. 2d 419, 424 (D.N.J. 2012) (quoting *Kay Berry, Inc.*, 421 F.3d at 207–08).  "A showing of

substantial similarity in this sense, coupled with evidence that the infringing author had access to the original work, permits a fact-finder to infer that the infringing work is not itself original, but rather is based on the original." *Id*. A plaintiff can prove "substantial similarity" through expert testimony, by direct evidence of copying, or an admission by the infringing author. *Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 208 (3d Cir. 2005).

"Because 'the ultimate question of substantial similarity requires a factual judgment,'" it is typically "a matter for the trier of fact." *LovePop, Inc. v. PaperPopCards, Inc.*, 286 F. Supp. 3d 283, 288 (D. Mass. 2018) (quoting *Harney v. Sony Pictures Television, Inc.*, 704 F.3d 173, 183 (1st Cir. 2013); *Yankee Candle Co. v. Bridgewater Candle Co.*, 259 F.3d 25, 34 n.5 (1st Cir. 2001)); *Malibu Media, LLC v. Doe*, 82 F. Supp. 3d 650, 653 (E.D. Pa. 2015); *Midway Mfg. Co. v. Bandai-Am., Inc.*, 546 F. Supp. 125, 139 (D.N.J. 1982).

As a threshold issue, Defendant argues that there are no substantial similarities between its designs and the Small Urn and Large Urn because any similarities are based on the idea of a turtle or its anatomy and are not protectible under copyright law. Congress excludes from copyright protection "any idea, procedure, process, system, method of operation, concept, principle, or discovery regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. § 102(b). Relying on these exclusions, courts will deny copyright protection "when a work's underlying idea can effectively be expressed in only one way." *Silvertop Assocs. Inc. v. Kangaroo Mfg. Inc.*, 931 F.3d 215, 222-223 (3d Cir. 2019). This "rare occurrence" is referred to as "merger," and courts find it "only when 'there are no or few other ways of expressing a particular idea'" or "if copyrighting a design feature would effectively monopolize an underlying idea, procedure, process, *etc.*" *Id.* (quoting *Educ. Testing Servs. v. Katzman*, 793 F.2d 533, 539 (3d Cir. 1986)). "Merger" applies most often "where the idea and the

expression are of items found in nature, or are found commonly in everyday life." *Id*. (quoting *Yankee Candle Co.*, 259 F.3d at 36). However, "if copyright does not foreclose 'other methods of expressing [an] idea . . . as a practical matter, then there is no merger.'" *Id*. (quoting *Educ. Testing Servs.*, 793 F.2d at 539).

Courts also exclude from copyright protection *scènes à faire* or elements of a work that are "standard, stock, or common to a particular topic or that necessarily follow from a common theme or setting." *Id*. at 223 (quoting *Dun & Bradstreet Software Servs. v. Grace Consulting, Inc.*, 307 F.3d 197, 214 (3d Cir. 2002)). "The doctrine covers those elements of a work that necessarily result[ ] from external factors inherent in the subject matter of the work." *Id*. (internal quotation marks omitted). Like merger, the *scènes à faire* doctrine "seeks to curb copyright's potential to allow monopolizing an underlying idea—via features that are so common or necessary to that idea's expression that copyrighting them effectively copyrights the idea itself. *Id*.

The United States Court of Appeals for the First Circuit has explained that *scènes à faire* cases "present a 'problem of proof' because the protected work often derives its essential features from the real-world object, and, of course, 'any subsequent artist' is free to draw inspiration from that same object." *LovePop, Inc.*, 286 F. Supp. 3d at 290 (quoting *Concrete Mach. Co. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 607 (1st Cir. 1988)). However, "even a realistic reproduction of a natural phenomenon may enjoy copyright protection." *Coquico, Inc. v. Rodriguez-Miranda*, 562 F.3d 62, 70 (1st Cir. 2009). "The determining factors are whether the work possesses original expressive elements and whether the alleged infringer has copied those elements, as opposed to gleaning them from the phenomenon in nature." *Id*.

Here, the Court can envision numerous examples of turtle urns that would not infringe the Small Urn and the Large Urn. Indeed, there are multiple ways to depict the idea of a sea turtle,

18

including but not limited to variations in its color, texture, shape, shell and facial markings, facial features and expression, expression of its movement, overall size, size of its component parts, both individually and in comparison to each other, and the materials used.  *See Silvertop Assocs. Inc. v. Kangaroo Mfg. Inc.*, 931 F.3d 215, 223 (3d Cir. 2019) ("[T]here are many other ways to make a costume resemble a banana.  Indeed, [appellee] provided over 20 non-infringing examples.  As the District Court observed, one can easily distinguish those examples from [appellee]'s costume based on the shape, curvature, tips, tips' color, overall color, length, width, lining, texture, and material . . . . Although a banana costume is likely to be yellow, it could be any shade of yellow— or green or brown for that matter.  Although a banana costume is likely to be curved, it need not be—let alone in any particular manner.  And although a banana costume is likely to have ends that resemble a natural banana's, those tips need not look like [appellee's] black tips (in color, shape, or size) . . . . The scenes a faire doctrine does not apply here either."); *Rasnick v. Jewelry & Mins. of Las Vegas*, No. 09-8072, 2011 WL 13213633, at *2 (C.D. Cal. Jan. 28, 2011) ("A whale itself is not protected by copyright, because it is an animal found in nature.  However, there are multiple ways to express the idea of a humpback whale in a hoop earring.  Therefore, the protected elements in plaintiff's earrings consist of: 1) The markings and facial expression of the humpback whale; and 2) The orientation and position of the whale's tail in relation to the whale's face.  These elements are plaintiff's artistic expression of the whale, which is protected by copyright.  Therefore, there is enough originality in plaintiff's earrings to survive the *scènes à faire* and merger doctrines." (citations omitted)).  A variety of these expressive and protectible elements exist in the Small Urn and Large Urn.  (*See* Pl. Response to Def. SUF ¶¶ 32-35; *see also id*. ¶¶ 87-99.)

Turning to the facts, Plaintiff states, and Defendant does not dispute, that she "conceived of the design for a cremation urn in the shape of an *imagined* sea turtle to be made from paper

mâché." (Def. Response to Pl. SUF ¶ 4 (emphasis added); *see also id.* ¶ 29 (stating that the Large Urn was in the shape of "an imagined sea turtle").) The parties also do not dispute that "Plaintiff's inspiration for the Small Urn [and Large Urn] came from a video Bruzzese's sister sent her of turtles hatching on a beach in Saipan." (Def. Response to Pl. SUF ¶¶ 5, 20.) Defendant disputes, however, that Plaintiff's designs were of a "fictitious turtle" and "not copied from any picture or pictures of turtles, or any turtle [she] had ever witnessed in real life." (Def. Response to Pl. SUF ¶¶ 10-11, 25, 26.)

Regarding Defendant's designs, the parties do not dispute that Defendant sought to develop a design that "looked more like an actual turtle" and relied on images of turtles "in the wild" and "where appropriate . . . implemented the interpretation of those images in [Defendant's] original design." (Pl. Response to Def. SUF ¶¶ 19, 23, 28.) However, Plaintiff disputes that Defendant designed urns resembling a realistic turtle and, thus, did not copy her original expressions of a turtle. (Pl. Response to Def. SUF ¶ 31.) She testified that Defendant's turtle urns were the "same size, shape, color, texture, [and] gesture" as her imagined turtle designs. (*Id.*; *see also* Def. Response to Pl. SUF ¶¶ 88-99 (stating that the following design elements of the parties' urns were similar: sense of graceful swimming, gesture of the head, the proportion of the different parts, the color, the texture, the material, the composition, the shape of the eyes, the mouth, the shape of the front flippers and how they differ from the shape of the front flippers of a real turtle, and the shape of the back flippers and how they differ from the shape of the back flippers of a real turtle).

Indeed, a comparison of the urn designs at issue (copied below) to realistic portrayals of turtles provided by the parties, (Def. Moving Br. at 18; ECF No. 54-1), demonstrates that neither Plaintiff nor Defendant designed an urn that depicts a realistic turtle.





| The Large Urn (Pl. Response to Def. SUF ¶ 32.) | Defendant's Large Urn (Pl. Response to Def. SUF ¶ 33.) |
|---|---|




| The Small Urn (Pl. Response to Def. SUF ¶ 34.) | Defendant's Small Urn (Pl. Response to Def. SUF ¶ 35.) |
|---|---|

 

However, whether Defendant's design depicts a turtle as found in nature or copies protected elements of Plaintiff's turtle design is a close call better resolved by the factfinder. *See Design With Friends, Inc. v. Target Corp.*, No. 21-01376, 2024 WL 4103737, at *4 (D. Del. Sept. 6, 2024) (denying summary judgment on the defendant's merger and *scènes à faire* defenses due to factual disputes); *LovePop, Inc.*, 286 F. Supp. 3d at 291 ("This dispute presents a close call better resolved by the trier of fact. A better record is needed to determine whether PaperPop's design depicts a wisteria tree as found in nature or copies protected elements of LovePop's 'Willow Tree' design."); *see also Nicassio v. Viacom Int'l, Inc.*, 776 F. App'x 761, 765 (3d Cir. 2019) ("There is obvious tension between the imperative to filter out unprotectable elements of a work while keeping sight of the work's total concept and feel (which necessarily includes unprotectable elements). We reconcile these competing considerations by recalling that the basic inquiry remains whether an ordinary observer would perceive that the defendant has copied protected elements of the plaintiff's work. Other filters, *e.g.*, *scènes à faire*, total concept and feel, *etc.*,

while helpful, are merely tools to assist the trier of fact in reaching a proper conclusion." (internal quotation marks omitted)).

It is true, as Defendant points out, that the United States Court of Appeals for the Second Circuit previously held in *Herbert Rosenthal Jewelry Corp. v. Honora Jewelry Co.*, that "[s]ince all turtles are created more or less along the same lines, appellant cannot, by obtaining a copyright upon one design of a turtle pin, exclude all others from manufacturing gold turtle pins on the ground that they are substantially similar in appearance." 509 F.2d 64, 65 (2d Cir. 1974). The court explained that "[a] comparison of the two pins [at issue]. . . discloses that, although there are numerous differences between the two, . . . each conforms generally to the shape of a turtle as that reptile appears in nature, with upper shell, legs, protruding head and tail." *Id.* The court also noted that "[g]oing beyond the initial observation that both pins are turtles and both are jeweled, . . . the average layman would indeed detect numerous differences, the existence of which are conceded by appellant's President, which tend to eliminate any substantial similarity of protected expression." *Id.* at 65-66. However, *Herbert Rosenthal* is distinguishable from this case. The Second Circuit declined to extend copyright protection to the idea of turtle-shaped pins. Unlike *Herbert Rosenthal*, Plaintiff is not seeking to extend her copyright to all turtle-shaped urns, only to those urns that copy her original expression of a turtle, including its "pose, attitude, gesture, structure, facial expression, color, and texture." (Pl. Opp. Br. 18.) The Court agrees, however, based on the Second Circuit's holding, that Plaintiff cannot seek copyright protection based solely on the fact that Defendant's urns are also shaped like turtles.

Like Defendant's merger and *scènes à faire* defenses, the Court must leave to the factfinder whether the protectible elements of the Small Urn and Large Urn are substantially similar to Defendant's turtle urns. There are both similarities and differences between the protectible

elements of the parties' urns.  (*See* Pl. Response to Def. SUF ¶¶ 32-35.)  However, the trier of fact must resolve the factual judgment of whether those similarities are substantial as this Court cannot determine, based on the record before it, that no reasonable jury, properly instructed, could find that the two works are substantially similar.  *Harney*, 704 F.3d at 183; *Yankee Candle Co.*, 259 F.3d at 34 n.5; *Design With Friends, Inc.*, 2024 WL 4103737, at *4; *Malibu Media, LLC*, 82 F. Supp. 3d at 653; *Midway Mfg. Co.*, 546 F. Supp. at 139.  Accordingly, the Court will deny the parties' Motions on the "substantial similarity" element of copyright infringement.

## V.     **CONCLUSION**

For the reasons set forth above, and other good cause shown, the Court will **DENY** both Plaintiff's Motion for Summary Judgment (ECF No. 36) and Defendant's Motion for Summary Judgment (ECF No. 41).

An appropriate Order follows.

Dated: June 27, 2025

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**